ACCEPTED
06-14-00105-cv
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/28/2015 2:54:06 PM
DEBBIE AUTREY
CLERK

## NO. 06-14-00105-CV

**IN THE SIXTH COURT OF APPEALS TEXARKANA, TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
4/28/2015 2:54:06 PM
DEBBIE AUTREY
Clerk

PLETZE BROWN, JR.

*Appellant,*

**V.**

CITIMORTGAGE, INC.

*Appellee.*

From the County Court at Law No. 2, Dallas County, Texas
Trial Court No. CC-14-04645-B
Honorable King Fifer, Judge Presiding

## BRIEF OF APPELLEE CITIMORTGAGE, INC.

Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 24036497
**HOPKINS & WILLIAMS, PLLC**
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com
shelley@hopkinswilliams.com

ATTORNEYS FOR APPELLEE

April 28, 2015

## IDENTITIES OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1), Appellee certifies that the following is a complete list of all parties and counsel:

1.  Appellee:                    Citimortgage, Inc.

    Represented at trial:        Lauren Christoffel
                                 Texas State Bar No. 24065045
                                 15000 Surveyor Boulevard
                                 Addison, Texas 75001
                                 (972) 340-5343
                                 (972) 341-0734 (Facsimile)
                                 LaurenC@bdfgroup.com

    Represented on appeal by:    Mark D. Hopkins
                                 Texas State Bar No. 00793975
                                 Shelley L. Hopkins
                                 Texas State Bar No. 24036497
                                 Hopkins & Williams, PLLC
                                 12117 Bee Caves Rd., Suite 260
                                 Austin, Texas 78738
                                 (512) 600-4320 – Telephone
                                 (512) 600-4326 – Facsimile
                                 mark@hopkinswilliams.com
                                 shelley@hopkinswilliams.com

2.  Appellant:                   Pletze Brown, Jr.
                                 *Pro Se Appellant*
                                 2412 Poinciana Lane
                                 Dallas, Texas 75212

3.  Trial Judge:                 Hon. King Fifer
                                 County Court at Law No. 2
                                 Dallas County, Texas

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ............................................... ii

TABLE OF CONTENTS ...................................................................... iii

INDEX OF AUTHORITIES ................................................................... iv

STATEMENT OF THE CASE ................................................................. 1

ISSUES PRESENTED .......................................................................... 2

STATEMENT OF FACTS ..................................................................... 3

SUMMARY OF THE ARGUMENT ......................................................... 4

ARGUMENT AND AUTHORITIES......................................................... 6

ISSUE NO. 1
    There Is Sufficient Evidence To Support The Trial Court's
    Determination That Appellee Has A Superior Right To Immediate
    Possession Of The Property................................................................. 8

ISSUE NO. 2
    Did Appellant's Challenge To The Validity Of The Foreclosure
    Sale Of The Property Deny The Trial Court Jurisdiction To
    Proceed With The Forcible Detainer Action When The Deed Of
    Trust Created A Tenancy At Sufferance Post-Foreclosure................. 10

ISSUE NO. 3
    As Appellee Filed Its Forcible Detainer Action A Month After
    Sending Notice To Vacate To Appellant, Did Appellee File Suit
    Within The Applicable Limitation Period Provided By Tex. Civ.
    Prac. & Rem. Code § 16.003 ............................................................. 15

CONCLUSION................................................................................... 17

CERTIFICATE OF SERVICE ................................................................ 18

CERTIFICATE OF COMPLIANCE.......................................................... 19

APPENDIX........................................................................................ 20

# INDEX OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Aguero v. Ramirez,*
   70 S.W.3d 372 (Tex. App.-Corpus Christi 2002, pet. denied)............................ 6

*Bierwirth v. Fed. Nat. Mortg. Ass'n.,*
   2014 WL 902541 (Tex. App. – Austin 2014)(mem. op.).................................. 10

*Black v. Washington Mut. Bank,*
   318 S.W.3d 414 (Tex. App.–Houston [1st Dist.] 2010, pet. dism'd w.o.j.)......... 7

*Brown v. CitiMortgage, Inc.,*
   472 Fed. Appx. 302 (5th Cir. 2012) ..................................................................... 3

*Clarkson v. Deutsche Bank Nat'l Trsut Co.,*
   331 S.W.3d 837 (Tex. App.—Amarillo 2011, no pet)......................................... 9

*Fandy v. Lee,*
   880 S.W.2d 164, (Tex. App.–El Paso 1994, no writ)........................................... 7

*Federal Home Loan Mortg. Corp. v. Pham,*
   2014 WL 5034638 (Tex. App.—Houston [14th Dist.] Oct. 9, 2014, no pet.) ... 16

*Fleming v. Fannie Mae,*
   2010 WL 4812983 (Tex. App.—Waco 2010, no pet.)......................................... 13

*Haith v. Drake,*
   596 S.W.2d 194 (Tex. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.) ........... 12

*Hartzog v. Seeger Coal Co.,*
   163 S.W. 1055 (Tex. Civ. App.–Dallas 1914, no writ)...................................... 12

*Home Sav. Ass'n v. Ramirez,*
   600 S.W.2d 911 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e)....... 7, 11

*Hong Kong Dev., Inc. v. Nguyen,*
   229 S.W.3d 415 (Tex. App.–Houston [1st Dist.] 2007, no pet.)........................... 7

*Hornsby v. Secretary of Veterans Affair,*
    2012 WL 3525420 (Tex. App.—Dallas 2012) .................................................. 8, 9

*Jaimes v. Federal Nat. Mortg.* Ass'n,
    2013 WL 7809751 (Tex. App. – Austin 2013)(mem. op.) ................................ 10

*Martinez v. Beasley,*
    572 S.W.2d 83 (Tex. Civ. App.–Corpus Christi 1979, no writ) ....................... 12

*Masaad v. Wells Fargo, N.A.,*
    2015 WL 410514 (Tex. App. – Austin 2015) .................................................... 16

*Mayhew v. Town of Sunnyvale,*
    964 S.W.2d 922 (Tex. 1998) ............................................................................... 6

*McLemore v. Pacific Southwest Bank,*
    872 S.W.2d 286 (Tex.App.—Texarkana 1994, writ dism'd by agr.) ................. 14

*Middleton v. Crestar Mortgage Corp.,*
    2000 WL 298694 (Tex. App.—Austin 2000, no pet.) ...................................... 13

*Mitchell v. Citifinancial Mortg. Co.,*
    192 S.W.3d 882 (Tex. App.—Dallas 2006, no pet.) ........................................... 9

*Owens-Corning Fiberglas Corp. v. Malone,*
    972 S.W.2d 35 (Tex. 1998) ................................................................................. 6

*Powelson v. U.S. Bank Nat'l Ass'n,*
    125 S.W.3d 810 (Tex. App.—Dallas 2004, no pet.) ........................................... 9

*Puentes v. Fannie Mae,*
    350 S.W.3d 732 (Tex. App.—El Paso 2011, pet. dism'd) ................................ 16

*Rice v. Pinney,*
    51 S.W.3d 705 (Tex. App. – Dallas 2001, no pet.) ................................. 8, 11, 12

*Rodriguez v. Citimortgage,*
    2011 WL 182122 (Tex. App.—Austin 2011, no pet.) ...................................... 12

*Schlichting v. Lehman Bros. Bank FSB*,
   346 S.W.3d 196 (Tex. App.—Dallas 2011, no pet.). ............................................ 12

*Scott v. Hewitt*,
   S.W.2d 816 (Tex. 1936) ...................................................................................... 6

*Shutter v. Wells Fargo Bank*,
   318 S.W.3d 467 (Tex. App.—Dallas 2010, pet. dism'd w.o.j.)........................... 12

*Singha v. Federal National Mortgage Association,*
   2015 WL 1477930 (Tex. App.—Dallas 2015)...……………………………...11

*Williams v. Bank of New York Mellon*,
   315 S.W.3d 925 (Tex. App.—Dallas 2010, no pet.) ......................................... 12

*Yarto v. Gilliland*,
  287 S.W.3d 83 (Tex. App.—Corpus Christi 2009, no pet.) ............................ 13, 14

**Statutes**                                                           **Page(s)**

TEX. CIV. PRAC. & REM. CODE § 16.003 ....................................................................... 2, 15

TEX. CIV. PRAC. & REM. CODE § 16.035(d) ...................................................................... 14

TEX. CIV. PRAC. & REM. CODE §16.003(a) ....................................................................... 16

TEX. CIV. PRAC. & REM. CODE §16.035............................................................................. 15

TEX. CIV. PRAC. & REM. CODE §16.035(a) ...................................................................... 15

TEX. CIV. PRAC. & REM. CODE §16.035(b) ...................................................................... 14

TEX. PROP. CODE § 24.002................................................................................................ 7, 16

TEX. PROP. CODE §24.004 ................................................................................................... 7

TEX. PROP. CODE §24.005 ................................................................................................... 7

## STATEMENT OF THE CASE

This is an appeal by Pletze Brown, Jr. ("Appellant") from a final summary judgment (CR 128) entered by the County Court at Law Number Two in Dallas County, Texas, granting CitiMortgage, Inc. ("Appellee") immediate possession of property located at 2412 Poinciana Lane, Dallas, Texas 75212 (the "Property"). CitiMortgage purchased the Property at a foreclosure sale on October 6, 2009.

Brown appeals the Judgment awarding CitiMortgage possession of the property (Appendix Ex. A) on the grounds that, the underlying foreclosure sale was invalid and that CitiMortgage did not bring its forcible detainer action within the applicable statute of limitation.

CitiMortgage filed a Forcible Entry and Detainer action on August 22, 2014 (CR 6-24). On September 5, 2014, the Justice Court, Precinct 5-2, Dallas County Texas entered judgment for CitiMortgage (CR 28). On September 8, 2014, Brown filed an appeal bond to appeal the judgment in favor of CitiMortgage. (CR 29).

On appeal in the County Court at Law No. 2, Dallas County, Texas, CitiMortgage filed a Motion for Summary Judgment on October 9, 2014 (CR49-108). The court set motion to be heard by submission for November 17, 2014 (CR 109). Brown filed a Response to Summary Judgment on November 10, 2014 (CR 114 – 127). The court granted CitiMortgage's Motion for Summary Judgment on November 18, 2014 (CR-128).

1

## ISSUES PRESENTED

I.     **Did the Trial Court appropriately enter judgment for Appellee on its forcible detainer suit based upon the documents admitted into evidence establishing Appellee's superior right to immediate possession of the Property, such evidence being: (a) a deed of trust with tenancy at sufferance clause, (b) a substitute trustee's deed, and (c) a notice to vacate?**

II.     **Did Appellant's Challenge to the Validity of the Foreclosure Sale of the Property Deny the Trial Court Jurisdiction to Proceed with the Forcible Detainer Action When the Deed of Trust Created a Tenancy at Sufferance Post-Foreclosure?**

III.     **As Appellee Filed its Forcible Detainer Action a Month After Sending Notice to Vacate to Appellant, Did Appellee File Suit within the Applicable Limitation Period Provided by Tex. Civ. Prac. & Rem. Code §16.003?**

## STATEMENT OF FACTS

Brown executed a Deed of Trust[1] dated October 16, 2002 (CR 57-82) (Appendix Ex. B) securing his loan of $143,313.00 from KB Home Mortgage Company with property commonly known as 2412 Poinciana Lane, Dallas, Texas 75212 ("the Property"). The Property was foreclosed after Brown failed to pay his residential mortgage; Appellee purchased the Property at a foreclosure sale on October 6, 2009. (CR 83). Brown filed a district court lawsuit challenging the foreclosure of the Property and judgment was rendered against Brown in that lawsuit on November 10, 2011 *See Pletze Brown & Jesse Brown v. CitiMortgage, Inc., et al.*, Case No. 3:11-cv-01102-K, In the Northern District of Texas, Dallas Division, affirmed on appeal by *Brown v. CitiMortgage, Inc., et al.*; 472 Fed. Appx. 302 (5th Cir. 2012) .

After resolution of the district court lawsuit (which took considerable time) CitiMortgage served Brown with a Notice to Vacate via certified mail. (CR 91–98) (Appendix Ex. D). The Notice to Vacate advised Brown that if he did not vacate the premises CitiMortgage would be filing a forcible detainer suit. Brown

---

[1] Appellant became a tenant at sufferance after foreclosure pursuant to Section 22 ("Acceleration; Remedies") of the aforementioned Deed of Trust which reads:

> If the Property is sold pursuant to this paragraph 22, Borrower **or any person holding possession of the Property through Borrower** shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower **or such person** shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding. (Appendix Ex. B, at Section 22) (emphasis added).

failed to vacate the Property and CitiMortgage filed a Petition for Forcible Detainer in the Justice of the Peace Court, Precinct No. 5, Position No. 2, Dallas County, Texas on August 22, 2014, seeking possession and costs of suit. (CR 6 - 24). On September 5, 2014, the Justice Court held a bench trial and entered Judgment granting possession of the premises to CitiMortgage (CR 28).

Brown appealed to the County Court at Law Number Two in Dallas County, Texas. CitiMortgage moved for summary judgment based upon the summary judgment evidence of the Deed of Trust creating a tenancy at sufferance post foreclosure, the Substitute Trustee's Deed, and the Notices to Vacate sent to Brown. Brown filed a summary judgment response asserting that he believed the underlying foreclosure sale was defective. The Trial Court granted summary judgment in favor of CitiMortgage, on November 18, 2014. (CR 128) It is from this judgment that Brown now appeals.

## SUMMARY OF THE ARGUMENT

**Evidence Supports Judgment in Favor of Appellee.** The Trial Court's judgment in favor of Appellee is supported by sufficient evidence showing Appellee's superior right to immediate possession of the Property. Appellee introduced documentary evidence showing that: (1) it had purchased the Property at a foreclosure sale, (2) that the Deed of Trust to the Property made Appellant a tenant at sufferance after the foreclosure, (3) that Appellee demanded that

4

Appellant vacate, and (4) that Appellant refused to do so. Appellant produced no evidence that would suggest that the Trial Court's decision is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.

**Jurisdiction of the Justice Court Over a Forcible Detainer.** Pro se Appellant's brief is somewhat unclear and confuses various legal concepts involving foreclosure with those involving the process of eviction. Appellant confuses "seeking possession of property" with that of "foreclosing on the property". Appellant asserts that the Trial Court lacked jurisdiction over the forcible detainer action because of supposed problems with acceleration of Appellant's mortgage obligation pre-foreclosure. However, it is well settled that a forcible detainer action is cumulative, not exclusive, of other remedies that a party may have. Even when a lawsuit is pending in a district court challenging the validity of a foreclosure sale, a county court has jurisdiction to determine the issue of possession to the property between the parties during the pendency of the district court lawsuit where the deed of trust creates a tenancy at sufferance relationship.

**Statute of Limitations on a Forcible Detainer Action is Two Years.** Appellant argues that CitiMortgage's limitation period within which it had to commence its forcible detainer action is calculated from the date that Appellant's mortgage was accelerated in 2009. Appellant is incorrect. An action for forcible

5

detainer has a two-year limitations period. A cause of action for forcible detainer accrues only after lawful demand to vacate has been properly sent to a party such as Appellant.

## ARGUMENT AND AUTHORITIES

### I.     Standard of Review

With respect to Appellant's assertion that the Trial Court lacked subject-matter jurisdiction over the forcible detainer action, the Court reviews such questions of law under the "de novo" standard of review. See *Aguero v. Ramirez*, 70 S.W.3d 372, 373 (Tex. App.—Corpus Christi 2002, pet.denied); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)(subject-matter jurisdiction).

With respect to Appellant's objection to the summary judgment evidence, the Court reviews a trial court's evidentiary decisions under an abuse of discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43, (Tex. 1998).

### II.    Nature of a Forcible Detainer Action

The forcible detainer action was created to provide a speedy, simple and inexpensive means for resolving the question of the right to immediate possession of real property without resorting to an action upon the title. *Scott v. Hewitt*, S.W.2d 816, 818-19 (Tex. 1936); *Rice v. Pinney*, 5l S.W.3d 705, 708 (Tex. App.—Dallas 2001, no pet.).

Thus, "the sole issue in a forcible detainer action is who has the right to *immediate* possession of the premises." *Rice*, 51 S.W.2d at 708; *see also Fandy v. Lee*, 880 S.W.2d 164, 168 (Tex. App.–El Paso 1994, no writ); *Black v. Washington Mut. Bank*, 318 S.W.3d 414 (Tex. App.–Houston [1st Dist.] 2010, pet. dism'd w.o.j.). No other issues, controversies or rights of the parties related to the property, including title, can be adjudicated in such a suit. *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex. App.–Houston [1st Dist.] 2007, no pet.). In simpler terms, a forcible detainer suit asks one simple and specific question: "who has right to possess the property *now*?" *Black,* 318 S.W.3d at 417.

A justice court and, on trial de novo, a county court have been given exclusive jurisdiction to decide the merits of a forcible detainer action.[2] Tex. Prop. Code §24.004; *Home Sav. Ass'n. v. Ramirez*, 600 S.W.2d 911 (Tex. Civ. App. – Corpus Christi, 1980); *Rice v. Pinney*, 51 S.W.3d 705 (Tex. Civ. App. – Dallas,

---

[2] The elements of a forcible detainer action are spelled out by statute.  Specifically,

(a) A person who refuses to surrender possession of real property on demand commits a forcible detainer if the person:

(1)  is a tenant or a subtenant willfully and without force holding over after the termination of the tenant's right of possession;

(2) is a tenant of a person who acquired possession by forcible entry.

(b) The demand for possession must be made in writing by a person entitled to possession of the property and must comply with the requirements for notice to vacate under Section 24.005.
TEX. PROP. CODE § 24.002

2001). The aforementioned jurisdiction cannot be infringed as long as the court merely determines possession. *See, Ramirez* at 913.

## III. ISSUE NO. 1

**THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S DETERMINATION THAT APPELLEE HAD A SUPERIOR RIGHT TO IMMEDIATE POSSESSION OF THE PROPERTY.**

Exactly as is the circumstance herein, "Forcible detainer occurs when a person, who is a tenant at sufferance, refuses to surrender possession of real property after his right to possession has ceased." Tex. Prop. Code §24.002(a)(2); *Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 632 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). To prevail in its forcible detainer action, Appellee was not required to prove title at trial, but was only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Rice* at 709.

The Dallas Court of Appeals, in *Hornsby v. Secretary of Veterans Affairs*[3] succinctly set out what is required of a litigant to meet its burden of proof in a forcible detainer action. 2012 WL 3525420 (Tex. App.—Dallas 2012, no pet.) (mem. op.). In *Hornsby,* the Court set out that, "To prevail on its claim [movant] was required to present more than a scintilla of evidence showing it had a right to possession of the property, [non-movant's] right of possession had ended, and

---

[3] 2012 WL 3525420 (Tex. App.—Dallas 2012, no pet.) (mem. op.)

[non-movant] refused to vacate." *Id.* at *5. The Court provided that a movant can meet its burden of proof by introducing the very same class of documents that were used to establish Appellee's claim herein. The documents sufficient to establish the elements of a cause of action for forcible detainer are: (1) a deed of trust that establishes a tenancy at sufferance relationship post-foreclosure (CR 57-82) (Appendix Ex. "B"), (2) a substitute trustee's deed (CR 83) (Appendix Ex. "C"), and (3) notices to vacate sent to the tenant at sufferance (CR 92-97) (Appendix Ex. "D"). *See Hornsby* at *5; *Clarkson v. Deutsche Bank Nat'l Trust Co.*, 331 S.W.3d 837, 840 (Tex. App.—Amarillo 2011, no pet); *Shutter v. Wells Fargo Bank, N.A.*, 318 S.W.3d 467, 471 (Tex. App.—Dallas 2010, pet. dism'd w.o.j).

The appellate record in this case squarely reflects that Appellee met its burden of proof in establishing its right to immediate possession of the Property in this forcible detainer action.

Appellant failed to introduce any evidence of a superior right to possession of the Property, and the Trial Court did not err in finding that the Deed of Trust (with tenancy at sufferance clause), Substitute Trustee's Deed, and written notices to vacate sufficiently established Appellee's superior right to possession of the Property. *See Mitchell v. Citifinancial Mortg. Co.,* 192 S.W.3d 882, 883 (Tex. App.—Dallas 2006, no pet.); *Powelson v. U.S. Bank Nat'l Ass'n,* 125 S.W.3d 810, 812 (Tex. App.—Dallas 2004, no pet.); *Rodriguez v. Citimortgage,* 2011 WL

9

182122 (Tex. App.—Austin 2011, no pet.) (mem. op.) (holding substitute trustee's deed, deed of trust and notices to vacate sufficient evidence to establish superior right of possession post-foreclosure) (mem. op.); *Jaimes v. Federal Nat. Mortg. Ass'n*, 2013 WL 7809751 (Tex. App.-Austin 2013, no pet.) (mem. op.); *Bierwirth v. Fed. Nat. Mortg. Ass'n.,* 2014 WL 902541 (Tex. App.–Austin 2014, no pet.) (mem. op.). For these reasons, the Trial Court's judgment awarding possession of the Property to Appellee should be affirmed.

## IV.   ISSUE NO. 2

**DID APPELLANT'S CHALLENGE OF THE VALIDITY OF THE FORECLOSURE SALE OF THE PROPERTY DENY THE TRIAL COURT JURISDICTION TO PROCEED WITH THE FORCIBLE DETAINER ACTION WHEN THE DEED AT TRUST CREATED A TENANCY AT SUFFERANCE POST-FORECLOSURE**

Appellant asserts that an "acceleration defect" impacting the underlying foreclosure sale raised an issue with title to the Property sufficient to rob the Trial Court of jurisdiction over the forcible detainer action. *See Appellant's Brief*, at 2. Specifically, Appellant asserts that since CitiMortgage accelerated the underlying mortgage note in 2009, that CitiMortgage is prohibited from attempting to take possession of the Property in 2014 by way of the forcible detainer action. As Appellant has challenged the subject matter jurisdiction of the Trial Court CitiMortgage appreciates Appellant's argument to be that the Trial Court was

10

precluded from determining the issue of possession without first determining the issue of title.

Less than one month ago the Dallas Court of Appeals Court issued a memorandum opinion in *Singha v. Federal National Mortgage Association;* Case No. 05-13-01518-CV, that literally could be cut and pasted into this case. In *Singha,* the appellant argued that because the lender breached the deed of trust the foreclosure sale was invalid. As such, the "case involves a question of title, the trial court lacked subject matter jurisdiction to enter a judgment." *Singha* at 5. The appellant therein went on to assert, "that the issues of title to the property and possession of the property are so inseparable that it is unreasonable to determine possession without first determining who holds its title." *Id.*

The *Singha* court set out very clearly that,

> A justice court or county court of law is not deprived of jurisdiction in a forcible detainer lawsuit merely because of the existence of a title dispute. Id. at 712. In fact, in most cases the right to immediate possession can be determined separately from the right to title. Id. at 710 (legislature contemplated concurrent actions in the district and justice courts to resolve issue of title and immediate possession in cases challenging the validity of a trustee deed)[4]. The trial court is

---

[4] A forcible detainer action is not exclusive, but cumulative, of any other remedy that a party may have in the courts of this state, and the displaced party is entitled to bring a separate suit in the district court to determine the question of title. *Rice v. Pinney*, 5l S.W.3d 705, 708 (Tex. App.—Dallas 2001, no pet.); *Home Sav. Ass'n v. Ramirez*, 600 S.W.2d 911, 913 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e); *Martinez v. Beasley*, 572 S.W.2d 83, 85 (Tex. Civ. App.–Corpus Christi 1979, no writ). The Texas Legislature purposely established a system for parallel, concurrent actions in the district and justice courts to resolve issues of title and immediate possession, respectively. *Scott v. Hewitt*, S.W.2d 816, 818-19 (Tex. 1936)*; Rice*, 51 S.W.2d at 708. Thus, forcible detainer actions in justice court may be brought and prosecuted

11

only deprived of jurisdiction if the determination of the right to immediate possession necessarily requires the resolution of a title dispute. Id. at 712; Schlichting v. Lehman Bros. Bank FSB, 346 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.).

*Singha* at 5-6. The Court went on to articulate that the foreclosure of property pursuant to the deed of trust created a landlord and tenant-at-sufferance relationship between the parties and it was not necessary for the trial court to resolve the title dispute in order to determine the right of immediate possession. *Id.;* relying on *Rice v. Pinney*, 51 S.W.3d 705 (Tex. App. – Dallas 2001, no pet.).

The Dallas Court of Appeals' reasoning in *Singha* is in line with numerous other Texas appellate courts, which have held that an appellant is barred from attacking a foreclosure sale purchaser's title within a forcible detainer action. *See e.g., Shutter v. Wells Fargo Bank,* 318 S.W.3d 467, 470 (Tex. App.—Dallas 2010, pet. dism'd w.o.j.) (validity of foreclosure and sale cannot be challenged in forcible detainer proceeding); *Williams v. Bank of New York Mellon,* 315 S.W.3d 925, 926–27 (Tex. App.—Dallas 2010, no pet.) (same); *Rodriguez v. Citimortgage*, 2011 WL 182122, *3 (Tex. App.—Austin 2011, no pet.) (memo. op.) (same); *Fleming v. Fannie Mae,* 2010 WL 4812983, *5 (Tex. App.—Waco 2010, no pet. h.) (mem. op.) (same); *Middleton v. Crestar Mortgage Corp.,* 2000 WL 298694, *4 (Tex.

---

concurrently with suits to try title in district court. *Rice*, 51 S.W.2d at 708; *Haith v. Drake*, 596 S.W.2d 194, 196 (Tex. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Hartzog v. Seeger Coal Co.*, 163 S.W. 1055, 160 (Tex. Civ. App.–Dallas 1914, no writ); *Rodriguez v. Citimortgage*, 2011 WL 182122 (Tex. App.—Austin 2011, no pet.)(mem. op.).

12

App.—Austin 2000, no pet.) (mem. op.) (same).

The *Singha* court echo's the San Antonio Court of Appeals (in *Dormandy v. Dinero Land & Cattle Co.*[5]) and the Corpus Christi Court of Appeals (in *Yarto v. Gilliland*[6]) in providing that where a deed of trust creates a tenancy at sufferance relationship post-foreclosure, that relationship alone provides a basis for determining possession without addressing the issue of title.

Even if Appellant's "title dispute" were examined on its merits, Apellant's legal argument is patently ineffective to establish his basis for title ownership in the Property.[7] Acceleration of the debt (as stated by Appellant within his brief) was

---

[5] The San Antonio Court of Appeals in *Dormady v. Dinero Land & Cattle Co.* stated,

> That is not the situation in this case where a landlord-tenant relationship is established in the original deed of trust. The landlord-tenant relationship provides a basis for determining the right to immediate possession without resolving the ultimate issue of title to the property. In short Dormady has the right to sue in district court to determine if the trustee's deed should be cancelled…independent of the trial court's determination in the forcible detainer action that [purchaser at foreclosure sale] is entitled to immediate possession. *Dormady v. Dinero Land & Cattle Co. held, " L.C.,* 61 S.W.3d 555 (Tex. App.—San Antonio 2001, pet. dism'd).

[6] In *Yarto v. Gilliland,* the Corpus Christi Court of Appeals provided,

> In most situations, the parties in a forcible detainer suit are in a landlord-tenant relationship. One indication that a justice court, and county court on appeal, is called on to adjudicate title to real estate in a forcible detainer case – and, thus exceed its jurisdiction, is when a landlord-tenant relationship is lacking. *Yarto v. Gilliland,* 287 S.W.3d 83, 89 (Tex. App.—Corpus Christi 2009, no pet.).

[7] An asserted basis for title ownership that is patently ineffective under the law does not raise the type of "title dispute" that would call the county court's jurisdiction into question in a forcible detainer action. *See generally, Yarto v. Gilliland,* 287 S.W.3d 83, 93 (Tex. App.—Corpus Christi 2009, no pet.).

on August 28, 2009. *See, Appellant's Brief* at 2. Under Texas law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code §16.035(b); *McLemore v. Pacific Southwest Bank,* 872 S.W.2d 286, 292 (Tex.App.—Texarkana 1994, writ dism'd by agr.). When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void. Tex. Civ. Prac. & Rem. Code § 16.035(d). Per Appellant's brief the debt herein was accelerated on August 28, 2009 and foreclosure sale conducted October 6, 2009, clearly inside the four-year statute of limitations. *See, Appellant's Brief* at 8.

At the end of the analysis, Appellant failed to produce any specific evidence of a valid title dispute that would have deprived the Trial Court of jurisdiction. The foreclosure sale occurred within four years of the mortgagee accelerating the debt and Appellant has stated no other challenge to the foreclosure sale within his briefing. There simply is no evidence that title and possession are so intertwined as to deprive the Trial Court of jurisdiction because a landlord-tenant at sufferance relationship exists between Appellant and Appellee that provides a basis for determining possession without addressing the issue of title.

## V.    ISSUE NO. 3

**AS APPELLEE FILED ITS FORCIBLE DETAINER ACTION A MONTH AFTER SENDING NOTICE TO VACATE TO APPELLANT, DID APPELLEE FILE SUIT WITHIN THE APPLICABLE LIMITATION PERIOD PROVIDED BY TEX. CIV. PRAC. & REM. CODE § 16.003?**

Appellant asserts that CitiMortgage is barred by limitations from bringing this forcible detainer action.  In reaching his flawed conclusion, Appellant cites the date his underlying mortgage note was accelerated, and he combines that date with the statute of limitation within Tex. Civ. Prac. & Rem. Code §16.035 which addresses that, "A person must bring suit for … the **foreclosure** of a real property lien not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code §16.035(a) (emp. added).  Based upon the facts as presented by Appellant, the mortagee did in fact foreclose within four years of acceleration of the debt.  (acceleration on August 28, 2009 and the foreclosure completed months later in October, 2009).

What Appellant fails to recognize is that a suit for forcible detainer is a different action than one seeking foreclosure.  Simply because CitiMortgage purchased the Property at foreclosure sale in 2009 does not in any way prohibit CitiMortgage from waiting to send a lawful demand to vacate (in this case until after a district court lawsuit challenging the foreclosure sale was resolved).

15

A forcible detainer action is a statutory creature and a cause of action for forcible detainer accrues after lawful demand to vacate is sent to a tenant. The statute of limitations on an action for forcible detainer is two years. *See* Tex. Civ. Prac. & Rem. Code §16.003(a). For a suit to be timely filed, it must be brought within two years from the date on which the cause of action accrues. *Id.*

The Texas Property Code §24.002 provides that a forcible detainer is committed when a person refuses to surrender possession of real property on demand and each refusal to surrender possession of real property on written demand for possession constitutes a new forcible detainer. *Masaad v. Wells Fargo, N.A.;* 2015WL410514 (Tex. App. – Austin 2015); also *See Federal Home Loan Mortg. Corp. v. Pham,* No. 14–13–00109–CV, 2014 WL 5034638, at *5 (Tex. App.—Houston [14th Dist.] Oct. 9, 2014, no pet.) (new and independent cause of action for forcible detainer arises each time person refuses to surrender real property after person entitled to possession delivers proper written notice to vacate); *Puentes v. Fannie Mae,* 350 S.W.3d 732, 739 (Tex. App.—El Paso 2011, pet. dism'd) (subsequent forcible-detainer action constitutes new and independent action to determine which party had superior right of immediate possession at time suit was filed).

In the present matter, the cause of action accrued at the time in which Appellant refused to vacate the property after lawful demand to vacate on October

21, 2013 and the forcible detainer action was timely filed on September 11, 2014. (CR 8-34).

## CONCLUSION

For these reasons, Appellee, CitiMortgage Inc., respectfully requests that this Honorable Court affirm the judgment of the Trial Court. Appellee also requests any other relief to which it may be entitled.

Respectfully submitted,

Hopkins & Williams, PLLC
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com
shelley@hopkinswilliams.com

By:     */s/ Mark D. Hopkins*
Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 24036497

ATTORNEYS FOR APPELLEE

17

# CERTIFICATE OF SERVICE

I hereby certify that Appellee's Brief for Cause No. 06-14-00105-CV has been forwarded to the following via certified mail, return receipt requested and regular U.S. mail on this 28th day of April 2015:


**Via regular U.S. mail**
**and CMRRR# 7012 1640 0001 7114 6357**
Pletze Brown Jr.
2412 Poniciana Lane
Dallas, Texas 75212

PRO SE APPELLANT


                                      */s/ Mark D. Hopkins*
                                        Mark D. Hopkins

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4.

1.  Exclusive of the exemption portions in Texas Rule of Appellate Procedure 9.4(i)(1), the brief contains: 2,935 words.

2.  THE BRIEF HAS BEEN PREPARED in proportionally spaced typeface using Microsoft Word 2011 in Times New Roman font, with 14 pitch font for text and 12 pitch font for footnotes.

3.  IF THE COURT SO REQUESTS, THE UNDERSIGNED WILL PROVIDE AN ELECTRONIC VERSION OF THE BRIEF AND/OR A COPY OF THE WORD OR LINE PRINTOUT.

4.  THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESEN-TATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVEN-TION OF THE TYPE-VOLUME LIMITS IN TEXAS RULE OF APPELLATE PROCEDURE 9.4, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

*/s/ Mark D. Hopkins*
Mark D. Hopkins

## APPENDIX

**Exhibit "A"**:     Judgment of Possession dated November 18, 2014

**Exhibit "B"**:     Deed of Trust dated October 16, 2002

**Exhibit "C"**:     Substitute Trustee's Deed dated October 6, 2009

**Exhibit "D"**     Notices to Vacate dated August 13, 2014

# Exhibit "A"

Judgment of Possession
dated November 18, 2014

CAUSE NO. CC-14-04645-B

| CITIMORTGAGE, INC. | § | IN THE COUNTY COURT |
|---|---|---|
| | § | |
| | § | |
| | § | |
| V. | § | AT LAW NO. 2 |
| | § | |
| PLETZE BROWN, JR. AND ALL OTHER | § | |
| OCCUPANTS OF 2412 POINCIANA LANE | § | |
| DALLAS, TEXAS 75212 | § | DALLAS COUNTY, TEXAS |

## SUMMARY JUDGMENT

On this date, the Court heard Plaintiff's Motion for Summary Judgment. After considering the pleadings, Motion, response, reply and evidence on file, it is the opinion of the Court that Plaintiff's Motion should be granted.

**IT IS ORDERED** that Plaintiff is entitled to possession of the premises described in Plaintiff's Original Petition for Forcible Detainer, and have restitution, for which let writ issue, of the premises commonly known as 2412 Poinciana Lane, Dallas, Texas 75212, and legally described, as:

BEING LOT 22, BLOCK GG, AMENDED PLAT GREENLEAF VILLAGE PHASE ONE, AN ADDITION TO THE CITY OF DALLAS, TEXAS, ACCORDING TO THE MAP OR SAID ADDITION AS RECORDED IN VOLUME 2002144, PAGE 1586, MAP RECORDS OF DALLAS COUNTY, TEXAS.

*This is a final judgment that disposes of all parties and all claims and is now appealable. (KP)*

ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.

SIGNED this 18 day of Nov., 2014.

JUDGE PRESIDING

CC-14-04645-B
CSJD
ORDER - SUMMARY JUDGMENT
698763

Page 128
Page 1

# Exhibit "B"

Deed of Trust
dated October 16, 2002

Return To:

KB HOME Mortgage Company
7660 South Industrial #201B
Las Vegas, NV 89139
Attn: Investor Compliance

2052548

10/31/02   3533713   155.00
Deed of Trust

Prepared By:

KB HOME Mortgage Company
4800 Fredericksburg Road
San Antonio, TX 78229

Order No. 02-5562
─────────── [Space Above This Line For Recording Data] ───────────
Escrow No. 02-5562                    1240004663
              DEED OF TRUST
                  MIN 100072112400046631

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

VA Case No.
LH-49-49-6-943752

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  October 16, 2002
together with all Riders to this document.
(B) "Borrower" is
Pletre Brown JR. and
Jessie Brown, Husband and Wife

Borrower is the grantor under this Security Instrument.
(C) "Lender" is KB HOME Mortgage Company

Lender is a corporation
organized and existing under the laws of the state of Illinois

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3044  1/01

-6B(TX) (0005)
Page 1 of 18                initials
    VMP MORTGAGE FORMS  (800)521-7291

2002 13 04869

Lender's address is 21650 Oxnard Street, Third Floor
Woodland Hills, CA 91367
Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is Victor Toledo,
. Trustee's address is
4800 Fredricksburg Road, San Antonio, TX 78229

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated October 16, 2002
The Note states that Borrower owes Lender
ONE HUNDRED FORTY THREE THOUSAND THREE HUNDRED THIRTEEN & 00/100 Dollars
(U.S. $ 143,313.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November first, 2032 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☒ Planned Unit Development Rider  ☐ 1-4 Family Rider
☒ VA Rider  ☐ Biweekly Payment Rider  ☒ Other(s) [specify]
Notice of No Oral Agreements
Texas Veteran Land Board  Deed of Trust Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Initials: PBQB

-6B(TX) (0005)  Page 2 of 16  Form 3044 1/01

2213 04370

Page 58

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Dallas :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

BEING LOT 22, BLOCK GG, AMENDED PLAT GREENLEAF VILLAGE PHASE ONE, AN ADDITION TO THE CITY OF DALLAS, TEXAS, ACCORDING TO THE MAP OF SAID ADDITION AS RECORDED IN VOLUME 2002144, PAGE 1585, MAP RECORDS OF DALLAS COUNTY, TEXAS.

Parcel ID Number: 00-17350-0GG-022-0000                  which currently has the address of
2412 Poinciana Lane                                                                    [Street]
Dallas                                                          [City], Texas    75212    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: PBGB

-6B(TX) (0005)                          Page 3 of 15                          Form 3044  1/01

20213 04371

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow

Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

-6B(TX) (0005)                 Page 5 of 16                 Initials: PBJB                 Form 3044 1/01

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

2013 04877

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _PA QB_

-6B(TX) (0005)      Page 10 of 15      Form 3044 1:01

7213 04878

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

LOAN # 1240004663
MIN 100072112400046631

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6B(TX) (0005)   Page 12 of 16   Initials: PB QB   Form 3044 1/01

2013 04880

Page 68

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

Initials: _MB_ _JB_

-6B(TX) (0005)        Page 13 of 16        Form 3044 1/01

2013 04081

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

Initials VB QB

-6B(TX) (0005)

Page 14 of 16

Form 3044 1/01

2002 13 04882

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     Pletze Brown JR.                    -Borrower

_____     _____ (Seal)
                                     Jessie Brown                        -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

-6B(TX) (0005)              Page 15 of 16              Form 3044  1/01

213 04883

LOAN # 1240004663
MIN 100072112400046631

STATE OF TEXAS
County of  Dollas

Before me  L  C  Bond                    on this day personally appeared

PLETZE  BROWN  JR

JESSIE  BROWN

known to me (or proved to me on the oath of
or through  DRIVER  LICENSE      ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this      16   day of  OcT   2002 .

(Seal)

_____
Notary Public

L. C. BOND
Notary Public, State of Texas
My Commission Expires
November 12, 2005

My Commission Expires:

Initials: PB QB

-6B(TX) (0005)          Page 16 of 16                          Form 3044  1/01

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this     16th      day of   October, 2002      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to

**KB HOME Mortgage Company, an Illinois Corporation**

(herein "Lender") and covering the Property described in the Security Instrument and located at

2412 Poinciana Lane
Dallas, Texas 75212

[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**

-538R (9904).01     3/99
Page 1 of 3     Initials: *PB QB*
VMP MORTGAGE FORMS - (800)521-7291

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

Initials PB QB

-538R (9904).01                    Page 2 of 3

LOAN # 1240004663
VA Case No.
LH-49-49-6-943752

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_Pletze Brown Jr._
Pletze Brown JR.
      -Borrower

_Jessie Brown_
Jessie Brown
      -Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

-538R (9904).01      Page 3 of 3

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **16th** day of **October, 2002** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

**KB HOME Mortgage Company , an Illinois Corporation**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2412 Poinciana Lane, Dallas , Texas 75212**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**COVENANTS, CONDITIONS, RESTRICTIONS**

(the "Declaration"). The Property is a part of a planned unit development known as **Greenleaf Village**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 3          Initials._____
-7R (0008)          VMP MORTGAGE FORMS - (800)521-7291          Form 3150 1/01

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials PB QB

-7R (0008)     Page 2 of 3     Form 3150 1/01

LOAN # 1240004663

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Pletze Brown Jr._ (Seal)
Pletze Brown JR.                     -Borrower

_Jessie Brown_ (Seal)
Jessie Brown                     -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

-7R (0008)               Page 3 of 3               Form 3150 1/01

## VETERANS LAND BOARD
### Veterans Housing Assistance Program

### DEED OF TRUST RIDER
(for One Note Situations: Veterans Land Board as Sole Beneficiary
of First Mortgage)

The rights and obligations of the Deed of Trust (the "Deed of Trust") to which the Rider is attached and the promissory note described in the Deed of Trust (the "Note") which it secures are expressly made subject to this Rider. In the event of any conflict between the provisions of this Rider and the provisions of the Deed of Trust or Note, the provisions of this rider shall control. To the extent that they are not modified by this Rider, all the terms, conditions and other provisions of the Deed of Trust and Note remain in full force and effect. The foregoing provisions are supplemented to, and do not supersede, any provisions under the Deed of Trust providing for acceleration of such loan.

1.       In the event the Borrower does not occupy the property purchased with the proceeds of the loan evidenced by the Program Note as the Borrower's principal residence for a period of three years from the date of the purchase of such property, or if the Borrower shall lease, transfer, sell or convey, in whole or in part, the Borrower's interest in such property, the Veterans Land Board of the State of Texas, as holder of the Note, may, to the extent permitted by applicable law, require escalation of the interest rate on the Note or acceleration and immediate payment of principal of and interest due on the Note and/or may pursue such other remedy or course of action as it may deem appropriate and in the best interest of the Veterans Housing Assistance Program.

2.       This Rider shall be binding upon and inure the benefit of the parties of the Deed of Trust and their respective successors and assigns.

**NOTICE TO BORROWER:**

**THIS DOCUMENT MODIFIES THE TERMS OF THE DEED OF TRUST. DO NOT SIGN IT UNLESS YOU HAVE READ AND UNDERSTOOD IT.**

I hereby consent to the modifications of the terms of the Deed of Trust which are contained in this Rider.

Dated this ___16___ day of __October__ ,__2002__

| | |
|---|---|
| _Pletze Brown Jr_ | _Jessie Brown_ |
| Borrower's Signature | Borrower's Signature |
| _Plek_ | |
| **Pletze Brown JR.** | **Jessie Brown** |
| Printed Name | Printed Name |
| | |
| Borrower's Signature | Borrower's Signature |
| | |
| Printed Name | Printed Name |



THE STATE OF TEXAS     }
COUNTY OF __Dallas__ }

        BEFORE ME, the undersigned, a Notary Public in and for The State of Texas, on this day personally appeared __PLETZE BROWN JR, JESSIE BROWN__ known to me to be the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowledged to me that he (she) (they) executed the same for the purposes and consideration therein expressed.

        GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ____16____ day of _____ __Oct 2002__ , _____.

L. C. BOHD
Notary Public
in and for THE STATE OF TEXAS

My Commission Expires:
_____

This instrument was prepared by: _____
Address: _____

202213 04892

FILED

2002 OCT 30 PH 2:19

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.

STATE OF TEXAS
COUNTY OF DALLAS

I hereby certify that instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

OCT 31 2002

COUNTY CLERK, Dallas County, Texas



2002213 04893

THE STATE OF TEXAS
COUNTY OF DALLAS
I hereby certify that the above and foregoing is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, filed on the date stamped thereon and as the same is recorded in the Recorder's Records in my office under the volume and page or instrument # stamped thereon.
I hereby certify on

SEP 24 2014

COUNTY CLERK, Dallas County, Texas

By_____ Deputy

Page 82

# Exhibit "C"

Substitute Trustee's Deed
dated October 6, 2009

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

2412 POINCIANA LANE
DALLAS, TX 75212
49-49-6-0943752
20090018803941

**\*CORRECTIVE SUBSTITUTE TRUSTEE'S DEED**

GRANTOR(S):
   JESSIE BROWN
   PLETZE BROWN, JR.
ORIGINAL MORTGAGEE:
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
   INC. ("MERS") AS NOMINEE

DEED OF TRUST DATE: October 16, 2002
DATE OF SALE OF PROPERTY: October 6, 2009

TIME OF SALE: 2:30 AM/(PM)
PLACE OF SALE OF PROPERTY:
   THE AREA OUTSIDE ON THE NORTHSIDE OF THE
   GEORGE ALLEN COURTS BUILDING FACING
   COMMERCE STREET BELOW THE OVERHANG OR AS
   DESIGNATED BY THE COUNTY COMMISSIONERS

CURRENT MORTGAGEE:
   CITIMORTGAGE, INC.
MORTGAGE SERVICER:
   CITIMORTGAGE, INC.

GRANTEE/BUYER:
   CITIMORTGAGE, INC.
GRANTEE/BUYER'S MAILING ADDRESS:
   5280 CORPORATE DRIVE
   FREDERICK, MD 21701

RECORDED IN:
   VOLUME 2002213, PAGE 04869.

AMOUNT OF SALE: $ 112,806.40

PROPERTY COUNTY/LEGAL DESCRIPTION : DALLAS
BEING LOT 22, BLOCK GG, AMENDED PLAT GREENLEAF VILLAGE PHASE ONE, AN ADDITION TO THE CITY OF DALLAS, TEXAS, ACCORDING TO THE MAP OR SAID ADDITION AS RECORDED IN VOLUME 2002144, PAGE 1586, MAP RECORDS OF DALLAS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The Subject sale was conducted no earlier than 1:00PM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3) hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this 11-12-09

_____
~~R. MARIS, L. PATTON,~~ R. ALCORN ~~OR R. FORSTER~~
Substitute Trustee

STATE OF TEXAS
COUNTY OF DALLAS

Before me, the undersigned Notary Public, on this day personally appeared ~~R. MARIS, L. PATTON,~~ R. ALCORN ~~OR R. FORSTER~~ as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 11-12-09.

My Commission Expires:
1/14/10

CELIA PRECIADO
Notary Public, State of Texas
My Commission Expires
January 14, 2010

_____
Notary Public for the State of TEXAS
Celia Preciado
Printed Name of Notary Public

**\*THIS IS A CORRECTIVE SUBSTITUTE TRUSTEE'S DEED CORRECTING THAT CERTAIN SUBSTITUTE TRUSTEE'S DEED EXECUTED ON** 10-26-09 **BY** R. Alcorn **, FILED ON** Oct. 28-09 **AND RECORDED IN VOLUME** _____ **, PAGE** _____ **OR CLERK'S FILE NUMBER** 200900304820 **OF THE REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS.**

RETURN TO:
   BARRETT DAFFIN FRAPPIER
   TURNER & ENGEL, L.L.P.
   15000 Surveyor Boulevard, Suite 100
   Addison, Texas 75001

Corrective Substitute Trustee's Deed (VA)
SubTrusteeDeedCorr.rpt - (04/23/2008) / Ver-11

STD20090018803941

# Exhibit "D"

Notices to Vacate
dated August 13, 2014

PLETZE BROWN, JR.                    00000003709672 EVCT
2412 POINCIANA LANE
DALLAS, TX 75212


### NOTICE TO TENANTS REGARDING THE
### "PROTECTING TENANTS AT FORECLOSURE ACT OF 2009"


### ARE YOU A TENANT OF THE ABOVE REFERENCED PROPERTY? IF SO
# IMPORTANT INFORMATION IS
# CONTAINED WITHIN THE ATTACHED
# NOTICE.


# | PLEASE READ CAREFULLY |

ISTC


# BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.


BV_TenantsAct2009_Banner_Manual.rpt - (01/19/2010) / Ver. 05

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

ATTORNEYS AND COUNSELORS AT LAW

15000 SURVEYOR BOULEVARD
SUITE 100, DEPARTMENT 400
ADDISON, TEXAS 75001
TELEPHONE: (972) 386-5040
TELECOPIER: (972) 341-0734

**August 13, 2014**

00000003709672

**IF YOU ARE A TENANT OF THIS PROPERTY YOU MAY HAVE CERTAIN RIGHTS AS SET OUT IN SECTION II OR SECTION III BELOW.**

PLETZE BROWN, JR.
2412 POINCIANA LANE
DALLAS, TX 75212

RE:  Premises located at
2412 POINCIANA LANE, DALLAS, TX 75212
(hereinafter referred to in this letter as "the property" or the "premises").

Please be advised this firm represents CITIMORTGAGE, INC. who purchased the property at a foreclosure sale held on Tuesday, October 6, 2009, or is the successor in interest to the party who purchased the property.

### PROTECTING TENANTS AT FORECLOSURE ACT OF 2009

If you are a Tenant of the property, you may have certain rights under the Protecting Tenants at Foreclosure Act of 2009. Please contact us immediately to let us know if you are a Tenant and please provide us with proof of your tenancy, such as a copy of your Lease or copies of rent receipts.

### Section I.
### NOTICE TO VACATE TO OCCUPANT(S) WHO ARE NOT TENANTS

Unless you are a Tenant as described in Section II or Section III below, this letter constitutes formal and final demand that you VACATE THE PREMISES located at 2412 POINCIANA LANE, DALLAS, TX 75212. If you fail to vacate the premises three (3) days after delivery of this notice, our firm has been authorized to file a forcible detainer suit against you for possession of the property.

### Section II.
### NOTICE TO VACATE TO TENANT(S) WITHOUT A LEASE

If you are a Tenant without a Lease or with a Lease terminable at will under applicable Texas law, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009, you must vacate the premises within ninety (90) days from the date you receive this notice. If you fail to comply with this demand, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and court costs incurred.

### Section III.
### NOTICE TO VACATE TO TENANT(S) WITH A LEASE

If you are a Tenant and you are occupying the premises under a Lease that you entered into before the foreclosure, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009 ("the Act"), you are entitled to occupy the premises for ninety (90) days after you receive this letter or until the end of the remaining term of the Lease, whichever is longer. If you are a Tenant who has a Section 8 Voucher, you have additional rights to continue to occupy the property. In order to confirm your status as Tenant, you must provide this firm with a copy of your Lease Agreement or other evidence of your tenancy including evidence of your Section 8 Voucher (if that applies) within ten (10) days from the date of this notice. If we do not receive evidence of your tenancy within ten (10) days, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and costs of court incurred. Your failure to confirm your status as a Tenant within ten (10) days will not act as a waiver of your rights under the Act.

## Section IV.
## IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:
## PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember, may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. Eligible service can include:

- Active duty (as defined in Section 101(d)(1) of Title 10, United States Code) with the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard (Texas or any other state);
- Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active service members of the commissioned corps of the Public Health Service;
- United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Please contact us immediately if one of the categories above applies to you. In addition, please provide us a copy of the military orders establishing that you are on active duty, your discharge papers or proof that you are a dependent of such a servicemember.

The seriousness of the actions suggested in this letter warrant your immediate attention. If you have any questions, please contact the Evictions Department at (972) 386-5040.

**PLEASE BE ADVISED THAT THIS LAW FIRM IS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Sincerely,

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP

Certified Mail RRR: 7160 9668 9671 0242 8068
Copy via regular mail

Loan #:      1380217
BDFTE#:      00000003709672

**USPS.COM**

Search USPS.com or Track Packages    Subr

Quick Tools                Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions

# USPS Tracking™

**Customer Service ›**
Have questions? We're here to help.

Tracking Number: 71609668967102428068

## Product & Tracking Information

**Postal Product:**            **Features:**
                               Certified Mail™

## Available Actions

Return Receipt After Mailing

| | | |
|---|---|---|
| **August 14, 2014 , 4:20 pm** | **Delivered** | **DALLAS, TX 75212** |

Your item was delivered at 4:20 pm on August 14, 2014 In DALLAS, TX 75212.

| | | |
|---|---|---|
| August 14, 2014 , 3:29 am | Departed USPS Facility | DALLAS, TX 75260 |
| August 13, 2014 , 11:37 pm | Arrived at USPS Facility | DALLAS, TX 75260 |
| August 13, 2014 , 9:17 pm | Arrived at USPS Facility | COPPELL, TX 75099 |

## Track Another Package

Tracking (or receipt) number

[                                        ]    Track It

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

**USPS.COM**   |   Copyright© 2014 USPS. All Rights Reserved.

PLETZE BROWN, JR.                    00000003709672 EVCT
1655 N SAINT AUGUSTINE DR
DALLAS, TX 75217


### NOTICE TO TENANTS REGARDING THE
### "PROTECTING TENANTS AT FORECLOSURE ACT OF 2009"


ARE YOU A TENANT OF THE ABOVE REFERENCED PROPERTY?  IF SO
## IMPORTANT INFORMATION IS
## CONTAINED WITHIN THE ATTACHED
## NOTICE.


## | PLEASE READ CAREFULLY |

ISTC


**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**


EV_TenantsAct2009_Banner_Manual.rpt - (01/19/2010) / Ver. 05

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

ATTORNEYS AND COUNSELORS AT LAW

15000 SURVEYOR BOULEVARD
SUITE 100, DEPARTMENT 400
ADDISON, TEXAS 75001
TELEPHONE: (972) 386-5040
TELECOPIER: (972) 341-0734

August 13, 2014

00000003709672

**IF YOU ARE A TENANT OF THIS PROPERTY YOU MAY HAVE CERTAIN RIGHTS AS SET OUT IN SECTION II OR SECTION III BELOW.**

PLETZE BROWN, JR.
1655 N SAINT AUGUSTINE DR
DALLAS, TX 75217

RE:     Premises located at
        2412 POINCIANA LANE, DALLAS, TX 75212
        (hereinafter referred to in this letter as "the property" or the "premises").

Please be advised this firm represents CITIMORTGAGE, INC. who purchased the property at a foreclosure sale held on Tuesday, October 6, 2009, or is the successor in interest to the party who purchased the property.

### PROTECTING TENANTS AT FORECLOSURE ACT OF 2009

If you are a Tenant of the property, you may have certain rights under the Protecting Tenants at Foreclosure Act of 2009. Please contact us immediately to let us know if you are a Tenant and please provide us with proof of your tenancy, such as a copy of your Lease or copies of rent receipts.

### Section I.
### NOTICE TO VACATE TO OCCUPANT(S) WHO ARE NOT TENANTS

Unless you are a Tenant as described in Section II or Section III below, this letter constitutes formal and final demand that you VACATE THE PREMISES located at 2412 POINCIANA LANE, DALLAS, TX 75212. If you fail to vacate the premises three (3) days after delivery of this notice, our firm has been authorized to file a forcible detainer suit against you for possession of the property.

### Section II.
### NOTICE TO VACATE TO TENANT(S) WITHOUT A LEASE

If you are a Tenant without a Lease or with a Lease terminable at will under applicable Texas law, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009, you must vacate the premises within ninety (90) days from the date you receive this notice. If you fail to comply with this demand, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and court costs incurred.

### Section III.
### NOTICE TO VACATE TO TENANT(S) WITH A LEASE

If you are a Tenant and you are occupying the premises under a Lease that you entered into before the foreclosure, please be advised that pursuant to the Protecting Tenants at Foreclosure Act of 2009 ("the Act"), you are entitled to occupy the premises for ninety (90) days after you receive this letter or until the end of the remaining term of the Lease, whichever is longer. If you are a Tenant who has a Section 8 Voucher, you have additional rights to continue to occupy the property. In order to confirm your status as Tenant, you must provide this firm with a copy of your Lease Agreement or other evidence of your tenancy including evidence of your Section 8 Voucher (if that applies) within ten (10) days from the date of this notice. If we do not receive evidence of your tenancy within ten (10) days, our firm has been authorized to file a forcible detainer suit against you for possession of the property. If suit is brought against you, you may be liable for the attorney's fees and costs of court incurred. Your failure to confirm your status as a Tenant within ten (10) days will not act as a waiver of your rights under the Act.

## Section IV.
## IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:
## PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember, may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. Eligible service can include:

- Active duty (as defined in Section 101(d)(1) of Title 10, United States Code) with the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard (Texas or any other state);
- Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active service members of the commissioned corps of the Public Health Service;
- United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Please contact us immediately if one of the categories above applies to you. In addition, please provide us a copy of the military orders establishing that you are on active duty, your discharge papers or proof that you are a dependent of such a servicemember.

The seriousness of the actions suggested in this letter warrant your immediate attention. If you have any questions, please contact the Evictions Department at (972) 386-5040.

**PLEASE BE ADVISED THAT THIS LAW FIRM IS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Sincerely,

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**

Certified Mail RRR: 7160 9668 9671 0242 8099
Copy via regular mail

Loan #:      1380217
BDFTE#:    00000003709672

**≡USPS.COM**                                    Search USPS.com or Track Packages   Subr

Quick Tools                    Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions

# USPS Tracking™

**Customer Service ›**
Have questions? We're here to help.

**Tracking Number: 71609668967102428099**

## Product & Tracking Information

**Postal Product:**                    **Features:**                                    ### Available Actions
                                       Certified Mail™

                                                                                        Return Receipt After Mailing

| Date & Time | Status of Item | Location |
|---|---|---|
| August 15, 2014 , 6:25 pm | Delivered | DALLAS, TX 75217 |

Your item was delivered at 6:25 pm on August 15, 2014 in DALLAS, TX 75217.

| | | |
|---|---|---|
| August 14, 2014 , 2:22 pm | Notice Left (No Authorized Recipient Available) | DALLAS, TX 75217 |
| August 14, 2014 , 7:39 am | Out for Delivery | DALLAS, TX 75217 |
| August 14, 2014 , 7:29 am | Sorting Complete | DALLAS, TX 75217 |
| August 14, 2014 , 7:05 am | Arrived at Unit | DALLAS, TX 75217 |
| August 14, 2014 , 3:29 am | Departed USPS Facility | DALLAS, TX 75260 |
| August 13, 2014 , 11:37 pm | Arrived at USPS Facility | DALLAS, TX 75260 |
| August 13, 2014 , 9:17 pm | Arrived at USPS Facility | COPPELL, TX 75099 |

## Track Another Package

**Tracking (or receipt) number**

[                                        ]        **Track It**

| LEGAL | ON USPS.COM | ON ABOUT.USPS.COM | OTHER USPS SITES |
|---|---|---|---|
| Privacy Policy › | Government Services › | About USPS Home › | Business Customer Gateway › |
| Terms of Use › | Buy Stamps & Shop › | Newsroom › | Postal Inspectors › |
| FOIA › | Print a Label with Postage › | USPS Service Alerts › | Inspector General › |
| No FEAR Act EEO Data › | Customer Service › | Forms & Publications › | Postal Explorer › |
| | Delivering Solutions to the Last Mile › | Careers › | National Postal Museum › |
| | Site Index › | | |

**≡USPS.COM**   |   Copyright© 2014 USPS. All Rights Reserved.